HARRY R. HARDEN, PETITIONER-APPELLEE, v. MORRIS BASIN DRY DOCKS COMPANY, RESPONDENT-APPELLANT.

Hudson County Court
Law Division

Decided ‘October 22, 1952.

*Mr. John J. Geronimo,* attorney for the petitioner-appellee.

*Messrs. O'Brien, Brett and O'Brien (Mr. Thomas Brett* appearing), attorneys for the respondent-appellant.

DUFFY, J. C. C. This is an appeal by respondent from a determination and judgment entered in the Division of Workmen's Compensation in favor of the petitioner. The appeal is pressed on two main grounds: (1) that petitioner's injury was not the result of an "accident" within the intendment of the Workmen's Compensation Act and (2) lack of notice or knowledge of the alleged injury within the statutory period of time, *i. e.,* 90 days.

The record discloses that on January 18, 1951, and for ten years prior thereto, petitioner had been employed by respondent as a ship's carpenter. He was then 66 years of age. He testified that on the date mentioned he and a co-worker were engaged in the shipyard in carrying on their right shoulders a 4 x 10-inch beam, approximately 12 feet long and weighing about 200 pounds. The yard had a surface of dirt and ashes. Petitioner was in the rear. Suddenly, "I had a sharp terrific pain run up my spine and I collapsed. * * * I went to the ground. I just simply— my knees went out from under me— * * * with the

crunching position the best way I could, with my back and legs all doubled up under me." In falling, the beam landed on top of him, or as he described it, "It went over me." The foreman almost immediately appeared at the scene and directed another worker to continue the carrying job. He assigned petitioner to light work aboard ship for the balance of the afternoon.

Petitioner testified that he has been in constant pain and under the care of doctors, both at home and in the hospital, since the described incident. He has not worked since that day.

Several physicians appeared on his behalf. The substance of their testimony was that on the date mentioned petitioner was afflicted with an osteoarthritis and rheumatoid arthritis of the shoulders, knees and spine which disabled him to the extent of approximately 80 per cent as a working unit. They conceded that this disability is independent of and not causally related to the incident of January 18, 1951. However, it was their opinion that the accidental injuries when added to the latent condition contributed to the point where he is now totally disabled.

Dr. Siegel, a neurologist, appearing for petitioner expressed an opinion that he suffered a bilateral lumbosacral radiculitis as a result of the accident. On cross-examination he explained his conclusion that the condition found was the result of an accident, as follows:

"Q. * * * Now, with the background you have in this case what, other than a spontaneous onset of arthritic pain, can you put your finger on as the cause of a lumbar sprain?
A. Well, he was carrying this heavy plank on his back and his weight bearing is changing as he is stepping. Now, if he steps down a little, a little, just a little lower, or if he doesn't carry his weight bearing properly, with the already irritated back that he has, this thing could cause him a sprain as a result of altered weight bearing."

(It should be noted, as stated earlier in this opinion, that the surface upon which petitioner was walking was of dirt and ashes composition).

"Q. And you are assuming that the carrying of this beam was the injury?
A. It was the trigger mechanism of the injury."

Dr. Siegel estimated the disability at 20% of total, both neurological and orthopedic, after having conferred with Dr. Visconti, an orthopedist.

The latter testified that based upon the condition which he found attributable to the accident, his diagnosis was the residuum of a sprain of the lower back involving the lumbo sacral, the right and left lumbar areas. The accident itself he attributed to a "physiological *over* act." On cross examination he was asked,

"Q. Well, what is the over act upon which you are predicating the disability?
A. Well, he was carrying this particular load and, because of some physiological over act in an unguarded moment, twist or turn, he did suffer injury to his back for which he required treatment and because of which he subsequently became disabled."

And, on redirect examination,

"Q. Isn't it a fact that carrying a beam on your shoulder and in that fashion will create a torsion or stress on the back and spine, that in itself?
A. I think I have covered that, that it is most unusual for a man to distribute the weight perfectly where a man of this type has been also carrying a beam on his shoulder, which in itself would imbalance the weight bearing apparatus."

The hospital record and the testimony of other witnesses show that petitioner underwent a prostate operation on September 14, 1948 from which he was absent from work about six or seven weeks. They also show that on January 7, 1947 he sustained a back injury in an accident arising out of and in the course of his employment with the present respondent. He was treated for the injury by a company doctor but lost no time from work. However, he did not file a claim for compensation benefits despite the fact that the report of X-ray pictures taken in connection with his present claim show, "There is an abnormal degree of

broadening of the right transverse process of the third lumbar vertebra that is believed to be related to old injury and there was a reduction in the depth of the intervertebral space between the fifth lumbar and the first sacral segment with a moderate degree of bone condensation at the opposing surfaces."

In spite of the underlying arthritic condition, the back injury mentioned above, the prostate gland operation and the ordinary debilities which accrue with advancing years, petitioner had an excellent record for attendance and performance at his job. Even his supervisor, Ole Moy, who testified for respondent, when asked, "What kind of a worker was Mr. Harden?" replied, "A good worker."

Respondent resisted petitioner's claim primarily on the ground that the circumstances disclosed fail to show an "accident" within the contemplation of the Workmen's Compensation Act. The defense was predicated on a showing that the carrying of a log by petitioner was a routine, everyday task that he performed casually during all the years that he had worked for the company and it was, therefore, incumbent upon petitioner to prove an unusual strain or an unusual exertion or some condition unusual in the employment so that it would constitute a compensable accident.

The medical proof presented by respondent was limited, consisting only of a written report by Dr. Ruoff in which he stated, "His inability to work is associated with a generalized arteriosclerosis and a chronic arthritis of the spine. * * * There is certainly no disability in this case due to trauma."

■ The long accepted definition of an accident in New Jersey has been, "an unlooked-for mishap or untoward event which is not expected or designed," *Bryant, admx. v. Fissell,* 84 *N. J. L.* 72 (*Sup. Ct.* 1913); "an unintended or unexpected occurrence," *Bollinger v. Wagaraw Building Supply Co.,* 122 *N. J. L.* 512 (*E. & A.* 1939); it is an event happening at a specific time or occasion, *Liondale Bleach Works v. Riker,* 85 *N. J. L.* 426 (*Sup. Ct.* 1914).

The position taken by respondent in this case found support in a decision by the Supreme Court, *Neylon v. Ford Motor Company*, reported in 8 *N. J.* 586 (1952). However, after reargument, in a recently announced decision, 10 *N. J.* 325 (1952) the court, by virtue of an equal division, affirmed in favor of petitioner. This affirmance sustained an award which petitioner had previously received as reported in 13 *N. J. Super.* 56 (*App. Div.* 1951).

Mr. Justice Jacobs in the recent decision specifically rejects the contention that there must be a showing of unusual or extraordinary strain or exertion in establishing compensability under the Workmen's Compensation Act, relying on his reported opinion in *Mills v. Monte Christi Corp.*, 10 *N. J. Super.* 162 (*App. Div.* 1950) and other cases for support. In his concurring opinion Mr. Chief Justice Vanderbilt states:

"In cases such as the one here before us where the injury is orthopedic and presumptively traumatic, I am of the opinion that proof of unusual strain or exertion is not required by the workmen's compensation laws."

The second ground of appeal is lack of notice or knowledge of petitioner's accidental injury within the 90-day period, *R. S.* 34:15–17. Petitioner's proofs are not overwhelming. He testified that his boss, Ole Moy was "right there" when the incident occurred, that he discussed the happening with Moy and was relieved by him of the carrying job and assigned to lighter work for the balance of the day. His co-worker testified that he immediately turned after the occurrence and helped petitioner to his feet, that he saw Moy in the vicinity and also saw Moy and petitioner conversing and that Moy assigned a replacement worker to assist in the carrying job. A neighbor of petitioner's testified that on January 19, 1951, because of petitioner's inability, due to pain and discomfort, to go downstairs to use the telephone, he, as a favor, called Mr. Edler, the office manager, and advised him that Harden would not report

to work because he had a back injury. He stated that he called Mr. Edler on at least a dozen occasions within the next few weeks reporting petitioner's condition and asking that a doctor be sent to examine him. On cross-examination the witness admitted that on some of the calls his primary inquiry was whether certain disability benefits under a company policy might not be payable to Harden. Respondent contends, through Edler's testimony, that this was the purpose of all the calls.

Testimony was also offered that in answer to a postal card petitioner called at the office of respondent's insurance carrier on February 7, 1951. He was accompanied by the neighbor mentioned above. After interrogation by an investigator, a statement was prepared which petitioner refused to sign. The statement (in the first person) referred to the back injury sustained on January 7, 1947 and attributed all the pains and aches since occurring in his back to that incident. It further recited, "I have not had any other accident to my back other than the accident in January, 1947." Petitioner was not called in rebuttal to explain why he refused to sign the statement.

Two investigators of the insurance carrier who obtained the statement testified that their inquiry stemmed from a letter received, dated January 29, 1951, from Mr. Edler, the office manager of respondent, which said, in part, "The above employee has been sent to us by his Doctor to check on date of a back injury which according to our records occurred January 7, 1947. This man stopped work app. Jan. 12, 1951 and told us he was seeing his doctor about a possible arthritic condition which was bothering him." They also denied that petitioner had mentioned anything about the episode of January 18, 1951.

Ole Moy, the boss carpenter, denied witnessing the occurrence and could not recall having any conversation with petitioner on that day.

■ Where, as here, the credibility of witnesses is a primary issue, I am guided by the fact that since the deputy director

had the distinct advantage of personal observation of them, his conclusions, when based upon competent evidence, should not be lightly disturbed, *Gilbert v. Gilbert Machine Works, Inc.*, 122 *N. J. L.* 533 *(Sup. Ct.* 1939); *Mason v. Evans,* 5 *N. J. Super.* 338 *(App. Div.* 1949).

I am satisfied that respondent had sufficient notice or knowledge of the injury sustained by petitioner on January 18, 1951. As held by the court in *General Cable Corp. v. Levins,* 122 *N. J. L.* 383 *(Sup. Ct.* 1939), affirmed 124 *N. J. L.* 223 *(E. & A.* 1940), "We are firmly of the opinion, however, that the actual knowledge of the employer under *R. S.* 34:15–17 need not be either of the cause of the injury or of the resultant consequences."

In deciding this case I am most impressed by the point that despite his infirmities petitioner was able to perform his work to the satisfaction of his employer. As mentioned earlier, his boss described him as a good worker. Yet, suddenly, on January 18, 1951 he collapsed and from that day forward has been completely disabled. As stated by Mr. Justice Wachenfeld speaking for the Supreme Court in *Galloway v. Ford Motor Co., 5 N. J.* 396, 400 (1950),

"While the evidence is conflicting, the medical experts not agreeing in many instances, the burden of proof from the record has been sustained. It points irresistibly to the conclusion that the accident was the cause of the disability. It is undisputed the respondent was healthy and vigorous before the accident and is now totally disabled and unable to work. This, in our opinion, according to the evidence, cannot be purely coincidental. It is reasonably inferable that the accident precipitated and accelerated the prior condition which produced the total incapacity."

It is therefore my conclusion that petitioner has established that he sustained an accident arising out of and in the course of his employment and that respondent had due notice thereof. Counsel may present, on proper notice, proposed findings of fact, conclusions of law and form of judgment consistent with the foregoing which should embrace also the details of nonissuable matters such as the compensation rate and the like.